FILED
2018 Aug-15 PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **BILLY W. REID**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:14-cv-01424-AKK-HNJ |
| **SERGEANT BRIAN STREIT and DEPUTY WEBBER**, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Billy Reid filed this lawsuit against Sergeant Brian Streit and Deputy Jonathan Webber of the Jefferson County Sheriff's Office, alleging that they acted with deliberate indifference to his medical needs after arresting him. Doc. 1. The magistrate judge ordered Webber and Streit to file a Special Report, doc. 24, and the court adopted the magistrate judge's Report and Recommendation denying the parties' respective motions for summary judgment, docs. 34; 39. Streit and Webber filed an interlocutory appeal, and the Eleventh Circuit dismissed Reid's equitable claims, but affirmed the court's finding denying Streit and Webber qualified immunity as to Reid's damages claims. *See Reid v. Streit*, 697 F. App'x 968 (11th Cir. 2017). Reid has now filed a motion for partial summary judgment on the issue of liability, doc. 65, which is due to be granted.

# I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (internal quotations omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version

of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

## II. FACTUAL BACKGROUND

The events here started when Streit received a complaint from a woman that her boyfriend had punched a wall during an argument and subsequently beat and raped her. Docs. 68-1 at 10; 68-2 at 10-11. A few days later, Streit and other officers went to Reid's home to question him about the allegations, and, upon their arrival, Reid fled on foot. Docs. 68-1 at 10; 68-2 at 10-11. Webber gave chase and ultimately subdued Reid with a taser gun, causing Reid to fall. Docs. 68-1 at 10; 68-2 at 11; 68-3 at 10. Streit and Webber both acknowledge that Reid's right hand was visibly swollen and that he told the officers he believed his hand was broken. Docs. 68-1 at 10; 68-2 at 12. Reid maintains that Webber's taser shot caused him to fall on his right hand, severely aggravating the injury he sustained when he punched the wall. Docs. 1 at 2; 68-3 at 10.

Streit executed a search warrant on Reid's home, while Webber transported Reid to the Sheriff's substation, where Reid continued to complain about his pain. Doc. 68-1 at 10-14. Webber called Streit to notify him that Reid was still in a great

deal of pain. Consistent with Streit's instruction, Webber called the paramedics. Docs. 68-1 at 10-11; 68-2 at 11-12. The parties disagree as to the paramedics' assessment of Reid. Specifically, Reid claims that the paramedics told him "that looks like a broken bone, and it looks like it's really crushed." Doc. 68-3. Streit, who was not present, also testifies that the paramedics diagnosed Reid with a broken hand. Doc. 68-1 at 11-12 ("The paramedics indicated that his hand was broken. I went with what they said."). Webber, on the other hand, claims that the paramedics merely said Reid's hand was "possibly broken." Doc. 68-2 at 12. The parties also disagree on whether the paramedics said that the injury was an emergency. Reid asserts that the paramedics told him that he needed to go to the hospital "immediately." Doc. 68-3 at 19-20. Webber, on the other hand, claims that the paramedics did not describe the injury as an emergency and stated only that there was nothing that they could do for Reid because he "need[ed] to see an orthopedic doctor." Doc. 68-2 at 12. As for Streit, when asked why he did not order Webber to transport Reid to the hospital or do so himself when he returned to the substation, he replied that "if [Reid's injury] would have been an emergency, . . . the paramedics would have said it was an emergency." Doc. 68-1 at 9-11.

Whatever the paramedics' assessment, Webber again called Streit to relay it, and Streit directed Webber to keep Reid at the substation so that Streit could interview Reid. *Id.*; doc. 68-2 at 12. Streit completed the search of Reid's home

4

and arrived at the substation approximately four hours later to interview Reid. Doc. 68-1 at 14. During the course of the interview, Reid rocked back in forth, cradled his right hand with his left, and complained many times to Streit about the intensity of his pain. *See* doc. 72-2. Streit explained to Reid that he would arrange for treatment after completing his interview. *Id.* After the interview, Reid somehow left the substation without permission. Doc. 68-6 at 4. Following his arrest about two weeks later, he received medical treatment, was diagnosed with a boxer's fracture, and eventually received orthopedic surgery to reset the bone and stabilize the hand with a titanium plate and screws. Docs. 68-3 at 28; 72-4 at 4.

## III. ANALYSIS

To prevail on a claim of deliberate indifference, Reid must establish: "(1) a serious medical need;[1] (2) the defendants' deliberate indifference to that need;[2] and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). Relevant here, intentionally delaying care by several hours for a serious and painful broken bone, without explanation, constitutes deliberate indifference as a matter of law. *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) ("[A]n unexplained delay of hours

---

[1] A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann* at 588 F.3d at 1307 (internal quotations omitted).

[2] Deliberate indifference requires a showing of: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

in treating a serious injury states a prima facie case of deliberate indifference," and "a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim."); *see also Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016) ("[B]roken bones and bleeding cuts are serious medical needs that require attention within hours," and "[s]evere pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances."). Reid argues that he is entitled to summary judgment on the issue of liability because Streit and Webber have failed to explain why they did not transport him to a hospital. Doc. 67.

Streit and Webber do not dispute that Reid's broken hand constituted a serious medical need, but contend that the dispute as to whether the paramedics classified the injury as an emergency precludes summary judgment. This argument is foreclosed by case law. The record is undisputed that 1) Reid complained to Webber that his hand was broken; 2) Webber noticed that Reid's hand was significantly swollen and learned from the paramedics that it was "possibly broken;" and 3) Streit believed that the paramedics had, in fact, diagnosed Reid with a broken hand. *See* docs. 68-1 at 10-14; 68-2 at 12. At the very least, Streit and Webber knew that Reid was in a tremendous amount of pain and that his hand was possibly broken, but nevertheless kept him at the substation for questioning. Moreover, Streit, unlike Webber, actually believed that the

6

paramedics had diagnosed Reid with a broken hand. Doc. 68-1 at 10-14. Still, Streit instructed Webber to keep Reid at the substation to wait for his return. *Id.* Even when Streit made it back to the substation four hours later, he still kept Reid there to interview him, despite knowing about the broken hand and Reid's pain. *See id.*

Because "an unexplained delay of hours in treating a [broken bone] states a *prima facie* case of deliberate indifference," the only way for Streit and Webber to rebut Reid's *prima facie* case of deliberate indifference is to sufficiently explain the delay. *See Brown*, 894 F.2d at 1538; *see also McElligott*, 182 F.3d at 1255 ("[T]he reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable."). In that respect, Streit and Webber offer two reasons for failing to transport Reid to a hospital, neither of which passes muster. First, Streit and Webber claim that the preexisting nature of the injury relieved them of any duty to provide medical care. Doc. 71 at 17-19. This argument has no merit because, as Reid explains, "government actors have a duty to provide medical care to detainees with serious medical conditions—regardless of when the injury itself occurred." Doc. 74 at 3; *see McElligott*, 182 F.3d at 1251–52 (finding a duty to provide medical care where an inmate entered the prison system complaining that he had experienced severe abdominal pains for several months).

Second, Streit and Webber cite their view of the non-"emergency" nature of the broken hand, in light of the paramedics' purported statement that there was nothing they could do for Reid that night and that Reid would need to see an orthopedic doctor instead. Doc. 71 at 15-19. This explanation is likewise unavailing. As an initial matter, the failure to take action based on the purported statement of a paramedic that there was nothing she could do for Reid does not carry the day where, as here, "even a lay person would easily recognize the necessity for a doctor's attention." *See Mann,* 588 F.3d at 1307. Moreover, Webber admits that the paramedics told him that Reid's hand was possibly broken and that he needed to see an orthopedic doctor. A paramedic's statement that a detainee needs treatment for an injury which a paramedic cannot provide does not create a reasonable basis to infer that the injury does not need prompt treatment.

Critically, the defendants have failed to explain, as the Eleventh Circuit pondered, "what Webber was doing while waiting for Streit to interview Reid," or "why Webber could not have taken Reid to the hospital while Streit searched Reid's home." *See Reid*, 697 F. App'x at 972. Both Webber and Streit offered unsatisfactory answers. For his part, Webber asserts that "[Reid] had to be interviewed first. . . . That's part of the investigation." Doc. 68-2 at 14. Streit's explanation is equally evasive and circular:

> [T]his was not an emergency situation. [I]f you look at my demeanor in the videos, his hand was actually irrelevant to me at that point in

> time because of the knowledge that I had at that point in time. He would have been treated. It was not an emergency situation, so the interview could go on. . . . I did not think that the interview was more important than the treatment of his hand. His hand had already been, in my mind, already treated by the paramedics. I already had information that . . . there was nothing that could be done.

Doc. 68-1 at 12. Streit and Webber have failed to offer any exigencies—such as the risk that Reid might flee or that a potential victim was in immediate danger—that required conducting the interview right away. Similarly, they have failed to cite any events beyond their control—such as extreme weather or some other emergency—that prevented them from transporting Reid to the hospital. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out.").

Streit and Webber may well have earnestly believed that Reid's injury was not urgent enough to justify postponing the interrogation. But good faith, subjective beliefs do not override the constitutional rights of individuals in state custody. *See Wood v. Strickland*, 420 U.S. 308, 321 (1975) ("[A]n act violating . . . constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law on the part of [the state official] than by the presence of actual malice."). The record is undisputed that Reid had a serious medical need, that Streit and Webber subjectively knew of that need and disregarded it, and that doing so caused Reid to languish in unnecessary pain for several hours. *See Mann*, 588

F.3d at 1306–07. In fact, Streit and Webber admit that they did not even offer Reid any aspirin for his pain. Doc. 71 at 6; *see McElligott*, 182 F.3d at 1257 ("Despite the repeated complaints about the pain he was suffering from, a jury could find that [the defendants] basically did nothing to alleviate that pain, essentially letting Elmore suffer even as his condition was deteriorating."). Because Streit and Webber provide no adequate explanation for their failure to provide medical care for Reid, summary judgment is due to be granted on Reid's deliberate indifference claims. *See Brown*, 894 F.2d at 1538; *see also Rhiner v. Sec'y, Fla. Dep't of Corr.*, 696 F. App'x 930, 931 (11th Cir. 2017) (noting that the Eleventh Circuit recognizes deliberate indifference claims "where a delay in treatment caused the inmate unnecessary pain, even when the injury was not life threatening or the delay lacked long-term consequences").

**CONCLUSION AND ORDER**

Consistent with this opinion, Reid's motion for partial summary judgment, doc. 65, is **GRANTED.** This matter will proceed to trial solely on the matter of damages, if any, Reid is due. In that respect, because Reid has failed to place into the record any medical evidence that his fall during the arrest exacerbated his preexisting hand injury, his damages, if any, will be limited to compensation for the needless pain he endured during his detention at the substation. *See Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1188 (11th Cir. 1994)

(deliberate indifference claim based on the exacerbation of an injury because of a delay in treatment requires medical evidence) (*overruled on other grounds*). In other words, the only question at trial will be the amount of damages, if any, that Streit and Webber owe Reid for their failure to transport him to a hospital. *See Reid*, 697 F. App'x at 968, 973 ("Even if the officers' delay in treating Reid's hand did not cause the need for Reid's hand surgery, a reasonable jury could find that the delay caused him unnecessary pain.").

      **DONE** the 15th day of August, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE
